UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>EMBA Transportation, Inc.,<br><br>Debtor. | Case No. 18-68814<br><br>Chapter 11 |

### ***EXPEDITED* MOTION TO APPROVE POST-PETITION ACCOUNTS RECEIVABLE FINANCING AND USE OF CASH COLLATERAL**

*(Basis for Expedited Relief)*
*The Debtor requires accounts receivable financing to maintain its operations. Without accounts receivable financing, the Debtor will not have sufficient working capital to maintain its operations. Due to the nature of the Debtor's business and the Debtor's relationships with a certain customer, accounts receivable financing is necessary to maintain positive cash flow.*

Debtor-in-possession, EMBA Transportation, Inc. (the "Debtor" or "EMBA"), through undersigned counsel, moves for the entry of an Order authorizing it to obtain and continue accounts receivable financing (the "DIP Financing") from Freight Factoring Specialists, LLC ("FFS" or "Lender") to use cash collateral pursuant to the attached Order, and in support thereof states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested in this Motion is 11 U.S.C. §§ 105 and 364 and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A. General Background

5. On November 6, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee, examiner or official committees have been appointed in this case.

### B.    The Debtor's Relationship with FFS

6. Prior to the Petition Date, FFS and the Debtor entered into an Accounts Purchasing Agreement dated April 6, 2017, a true and correct copy of which is attached hereto as **Exhibit "A"** (the "Financing Agreement").

7. Pursuant to the Financing Agreement, FFS agreed to provide accounts receivable financing to Debtor. Upon the sale of each invoice, FFS advances to the Debtor 95% of the face value of each invoice.

8. To continue its operations and maintain its cash flow, the Debtor requires accounts receivable financing. The Debtor sells to its customers on net 30 day terms, but customers in the industry regularly pay their invoices in 45 or 60 days.

9. Thus, factoring allows the Debtor to access 95.0% of its accounts receivable in 24 to 72 hours and the balance upon payment of the invoice from the customer. Without this accounts receivable financing the Debtor will lack access to sufficient working capital to expand its manufacturing and sales efforts.

10. Debtor and FFS have agreed to grant, as adequate protection for any diminution in the value of its prepetition collateral, and the proceeds thereof, and Cash Collateral, and the proceeds thereof, a valid, perfected and enforceable first-priority security interest (the "Replacement Liens") in and upon all of the categories and types of collateral in which FFS held a security interest and lien as of the Petition Date (the "Prepetition Collateral"), including, without limitation, Cash Collateral, and the proceeds thereof (collectively, all of the collateral described in this paragraph, the "Collateral").

## LEGAL ARGUMENT AND CITATION TO LEGAL AUTHORITY

11. The Debtor is unable to obtain financing on more favorable terms from sources other than FFS. The Lender is vital to the Debtors continued post-petition business operations.

12. Pursuant to 11 U.S.C. § 364 and Rule 4001 of the Federal Rules of Bankruptcy Procedure, the Court may authorize the obtaining of credit. In the event the Debtor does not obtain post-petition accounts receivable financing, it will not have the available funds with which to continue business operations. Accordingly, the Debtor respectfully submits that obtaining post-petition financing is necessary in order to avoid immediate and irreparable harm to the Debtor.

13. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless each entity with an interest in such cash collateral consents or the Court authorizes such use, sale or lease. Section 363(e) provides that the Court shall condition such use of cash collateral as is necessary to provide adequate protection of such interests. Section 363(p) provides that at a hearing on the use of cash collateral, the entity asserting an interest in the cash collateral has the burden of proof on the issue of the validity, priority, or

extent of such interest, and the debtor-in-possession has the burden of proof on the issue of adequate protection.

14. Debtor does not keep a revolving accounts receivable. Debtor invoices each customer for each day's work and are paid contemporaneously with sending the invoice. Other entities with potential cash collateral interests include 800fund.com, 6th Avenue Capital, Retail Capital, LLC, and New State Capital Partners.  At the time of the filing of this motion, Debtor cannot ascertain the priorities of each of the aforementioned creditors because the UCC-1 Financing Statements utilize a servicing corporation that does not disclose the name of any creditor. But it appears from the public record that FFS has a first priority security interest in Debtor's pre-petition accounts and accounts receivable.

15. The Debtor submits that the proposed financing is in the best interest of the estate and its creditors, given the fact that the Debtor does not have the ability to obtain other financing elsewhere. The Debtor submits that the estate could not obtain more favorable financing than that which is proposed in the time frame required to ensure uninterrupted cash flow.

16. Debtor requests that the Court enter the attached proposed order draft by FFS as a condition of their commitment to continue factoring to Debtor.

WHEREFORE, the Debtor respectfully requests that the Court approve the proposed financing and cash collateral protection pursuant to the attached Order, authorize the Debtor to continue financing its accounts receivable with FFS and grant such other and further relief that is just and proper.

Dated: November 6, 2018

Respectfully submitted,

/s/ Will Geer
Will Geer
Georgia State Bar No. 940493
Wiggam & Geer, LLC
50 Hurt Plaza, SE
Atlanta, Georgia 30303
T: (678) 587-8740
F: (404) 287-2767
wgeer@wiggamgeer.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:

EMBA Transportation, Inc.,

Debtor.

Case No. 18-68814

Chapter 11

**INTERIM ORDER  APPROVING POST-PETITION FINANCING AGREEMENT, (B) GRANTING SECURITY INTERESTS AND ADMINISTRATIVE EXPENSE TREATMENT AND USE OF CASH COLLATERAL, AND (C) MODIFYING AUTOMATIC STAY, PURSUANT TO SECTIONS 362 AND 364 OF THE BANKRUPTCY CODE**

THIS MATTER, having come regularly before the undersigned upon the motion of EMBA Transportation, Inc. (the "Debtor") for approval of post-petition financing of the Debtor by Freight Factoring Specialists, LLC ("Secured Party") and the granting of security interests under Section 364 of the Bankruptcy Code (the "Motion"), and it appearing that the immediate entry of this Order is essential to the continued orderly operation of the Debtor's business and is in the best interest of the Debtor and the Debtor's estate, the following findings of fact are made by the Court:

**I. FINDINGS OF FACT**

1. On November 5, 2018(the "Petition Date") the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code.

2. The Debtor and Secured Party are parties to a Factoring Master Agreement dated April 6, 2017 (the "Pre-Petition Agreement"), a copy of which is annexed hereto as Exhibit A, pursuant

to which the Debtor has sold Accounts (as that term is defined in the Uniform Commercial Code) from Secured Party on a secured basis.

3. The Pre-Petition Agreement provides for advances by Secured Party to the Debtor, so long such advances do not cause the ratio of the Debtor's obligations to Secured Party to the value (as determined in the Pre-Petition Agreement) of the Debtor's eligible (as determined in the Pre-Petition Agreement) accounts to exceed that set forth in the Pre-Petition Agreement (the "Formula").

4. As of the Petition Date, the Debtor was indebted to the Secured Party in the amount of at least $300.00 secured by the collateral described in the Pre-Petition Agreement.

5. The Debtor has offered to assign and sell its accounts to Secured Party under the Pre-Petition Agreement and Secured Party has agreed to consider making purchases of accounts and advances to the Debtor pursuant thereto. All references to "accounts" shall have the meaning as set forth in the Uniform Commercial Code.

6. The Debtor, notwithstanding its efforts to do so, is unable to obtain unsecured credit allowable under 11 U.S.C. Section 503(b)(1) as an administrative expense, or other than pursuant to 11 U.S.C. Section 364(c) and 364(d)(1), and the Debtor is unable to obtain credit on terms equal to or more favorable than those proposed by Secured Party.

7. Secured Party has agreed to consider making purchases of accounts and advances to the Debtor in accordance with the Pre-Petition Agreement in good faith, within the meaning of 11 U.S.C. Section 364(e), and the Interested Parties were either notified of the Motion, as evidenced by the affidavit of service, or were present at this Court's hearing on the Motion.

8. Good cause exists for approval of the Debtor's agreement to agree to the financing by Secured Party under the terms of the Pre-Petition Agreement, and the entry of this Order will

minimize disruption of the Debtor as a "going concern" and is in the best interest of the Debtor, its creditors, and its estate. The terms upon which the Debtor is authorized to utilize cash advances are determined as fair under the circumstances.

9. The Debtor has provided written notice of the filing of the Motion to Secured Party, the United States Trustee, the Official Creditors' Committee and its counsel, the twenty largest unsecured creditors of the Debtor, all of the Debtor's secured creditors, the Internal Revenue Service, and all parties who filed requests for notice as evidenced by the affidavit of service filed by the Debtor's counsel with this Court, which notice this Court finds to be appropriate and adequate under Federal Rules of Bankruptcy Procedure as required by Section 364 of the Bankruptcy Code.

10. The Debtor admits, without prejudice to the rights of an Official Committee of Unsecured Creditors and third parties to challenge same to the extent set forth below, that as of the Petition Date, in accordance with the Pre-Petition Agreement, the Debtor was indebted to the Secured Party, without defense, counterclaim, recoupment or setoff, in the aggregate amount of at least $300.00, secured by a valid, enforceable and properly perfected first priority lien in the collateral described therein.

**II. ORDER**

Based on the foregoing Findings, it is now therefore ORDERED as follows:

1. All capitalized terms used in this Order, not otherwise defined herein and unless otherwise indicated, shall have the meaning given them in the Pre-Petition Agreement.

2. The Debtor is authorized, effective immediately, to sell accounts to the Secured Party on a secured basis subject to the terms of the Pre-Petition Agreement, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all

undertakings and obligations thereunder. The Secured Party is authorized, effective immediately, to purchase accounts from the Debtor in is sole business discretion.

3. The Debtor is authorized to ratify, and is deemed to have so ratified, the Pre-Petition Agreement.

4. The Debtor is authorized and empowered to incur secured indebtedness to Secured Party pursuant to this Order and the Pre-Petition Agreement in such amounts as needed in the ordinary course of its business and not for any purpose prohibited by law.

5. Secured Party and Debtor may amend, modify, supplement, waive the provisions of and/or extend the term of the agreements contemplated herein without further order of the Court provided that same does not materially alter the provisions thereof.

6. Secured party shall be granted a senior secured interest "Replacement Lien" in all of its post-Petition Collateral to the same extend and priority as existed on the Petition Date, as collateral for all post-petition obligations of the Debtor to Secured Party, including Secured Party's attorneys' fees and expenses incurred in connection with the negotiation, documentation, closing and enforcement of the Pre-Petition Agreement and the protection of Secured Party's rights in this Bankruptcy Case (the "Obligations").

7. In addition to the fees, costs, charges and expenses authorized under the Pre-Petition Agreement, the Obligations shall constitute an administrative expense claim pursuant to Code Section 364(c)(1) which shall have parity with any and all other administrative expenses of the kind specified in Code section 503(b) and 507(b).

8. For administrative convenience, Secured Party may record the pre-petition transactions and the post-petition transactions arising under the Pre-Petition Agreement in one account, and apply payments on a "first in, first out" basis.

9. The liens granted to Secured Party herein are deemed validly granted, duly attached, and properly perfected, without the need of any additional actions being taken by or on behalf of Secured Party, including but not limited to, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event Secured Party does make such a filing or recordation, the Debtor shall execute all documents required by Secured Party to do so.

10. The Debtor may use the proceeds of any advance under the Pre-Petition Agreement only in accordance with any Order or applicable law.

11. Nothing in the Pre-Petition Agreement, or in any of the documents executed in connection therewith or this Order, shall give this Court the authority to require Secured Party to purchase the Accounts of the Debtor, such being in the sole discretion of Secured Party.

12. Secured Party is hereby afforded the protection of Section 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order, or to the modification, vacating, or other amendment of this Order by this Court.

13. The Debtor shall comply with all provisions of Pre-Petition Agreement.

14. To the extent that any provision of the Pre-Petition Agreement shall cause the Debtor to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by Secured Party.

15. The Debtor shall not grant to any party any interest in the Collateral or priority in payment prior to or equal with the lien or priority in payment hereby being accorded to Secured Party.

16. The entry of this Order and execution, delivery, and performance under the Pre-Petition Agreement, or under any other documents executed in connection therewith, do not constitute a compromise, waiver, or other relinquishment of any right of Secured Party at law, in equity or

otherwise, including, but not limited to, any right of Secured Party to request and to obtain relief under the Bankruptcy Code.

17. The automatic stay provisions of 11 U.S.C. Section 362 are lifted and terminated to enable Secured Party to implement the provisions of this Order and otherwise thereby to permit Secured Party to demand and receive collections on account of the Collateral, and to apply those collections to the Obligations. Notwithstanding the foregoing, the Secured Party is not hereby granted relief from the automatic stay to enforce any remedies against the Debtor that may be afforded under the Pre-Petition Agreement. In the event a Default occurs under the terms of the Pre-Petition Agreement, Secured Party shall have a right to notice an expedited hearing before this Court seeking such relief as may be deemed appropriate upon three days' notice to counsel for the Debtor; (ii) counsel for any statutory committee appointed herein or, alternatively, the twenty largest unsecured creditors; (iii) the Office of the U.S. Trustee; and (iv) the United States Attorney's Office.

18. The Debtor is authorized to use the Cash Collateral in accordance with this Order and Pre-Petition Agreement until the earlier of (a) the failure of Debtor to perform any of obligations under this Order or the Pre-Petition Agreement, (b) conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, or (c) payment in full of Secured Party Indebtedness, including costs and expenses of Secured Party.

19. The Debtor will not seek to surcharge the Secured Party or its collateral with any expenses of the type described in Section 506(c) or 552(b) of the Bankruptcy Code unless it obtained Secured Party's prior written consent to the incurrence of such expenses.

20. The Pre-Petition Agreement is enforceable according to its terms and nothing contained therein is unlawful, unenforceable or violative of any usury or similar statute.

21. An event of default under this Order ("Default") shall include the following:

    a. The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Order;

    b. Except for the Existing Defaults, the Debtor's failure to perform or comply with any of the terms, conditions, or covenants of the Agreement;

    c. The termination of this Order by its own terms, operation of law or court order;

    d. The dismissal of this Bankruptcy Case;

    e. The appointment of a trustee under the Bankruptcy Code;

    f. The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code;

22. Upon the occurrence of a Default, Secured Party shall provide the Debtor written notice of such Default to the Debtor and counsel for the Debtor. If the Default is a type that is not curable, or is curable by the Debtor and the Debtor fails to cure the Default within 48 hours from the time of service of such notice of the Default, all of the following shall be deemed to have occurred unless otherwise waived by Secured Party in writing:

    a. Secured Party's consent regarding the Debtor's use of the Cash Collateral pursuant to this Order is terminated without further notice;

    b. the Debtor shall not use any Cash Collateral for any purpose;

    c. the Debtor shall hold and segregate all Cash Collateral in trust for Secured Party and

    d. Secured Party shall be entitled to an expedited hearing on a motion for immediate relief from the automatic stay under Section 362 within not less than two (2) Court days from the date of the Default, subject to the Court's calendar (the "Stay Relief Motion"). The only issue

for consideration by the Court with respect to the Stay Relief Motion is whether a Default has occurred.

23. Notwithstanding anything to the contrary contained herein, neither the proceeds of any advance from Secured Party, nor any Cash Collateral shall be used either: (a) in connection with the investigation, assertion, commencement, or continuation of any action or claim against Secured Party or (b) to object to or contest, or raise any defenses to the validity, perfection, priority, or enforceability of any rights or claims of the Secured Party.

24. The Debtor is authorized to use the Cash Collateral in accordance with the Budget, attached hereto as Exhibit "A" (the line items of which the Debtor may modify by no more than ten percent (10%) without authorization of FCB or this Court), and for payment of U.S. Trustee fees or for other matters pursuant to orders entered by this Court after appropriate notice and hearing, except that Debtor shall pay the actual amount owed to any utility, insurance payments, or employee who is not salaried.

25. This Order is without prejudice to Secured Party's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Agreement, and any other applicable agreement or law, including without limitation to seek relief from the automatic stay and/or to seek adequate protection with respect to matters not covered by this Order, to seek an injunction, and/or to object to applications for allowance and/or payment of compensation of professionals employed by the Debtor or its estate. Secured Party's acceptance and/or application of any payments by the Debtor, or its Account Debtors, and the Debtor's payments to Secured Party pursuant to this Order, shall not be deemed or construed as evidence or an admission of value of the Collateral (in connection with Section 362 or 506 or otherwise), and shall not constitute a waiver of its

rights to claim the difference, if any, between any payments received by Secured Party and the actual contractual amounts due under the Agreements.

26. This Order shall constitute an Interim Order.

27. The obligations and indebtedness owed under the Pre-Petition Agreement are valid and indefeasible obligations of the Debtor and its estate, in accordance with their terms; and the liens and security interests in favor of Secured Party with respect to the Collateral are valid, enforceable, perfected, and unavoidable under the Bankruptcy Code, including Section 552, and any other applicable law.

Presented by:

/s/ Will Geer
Will Geer
GA Bar No. 940493
Wiggam & Geer, LLC
50 Hurt Plaza, SE
Suite 1245
Atlanta, Georgia 30328
wgeer@wiggamgeer.com
678-587-8740

Prepared and consented to by:

/s/ David Jencks
David J. Jencks
Jencks & Jencks, P.C.
121 North Egan Avenue
PO Box 442
Madison, South Dakota 57042

| **EMBA Transportation, Inc.** | **Monthly Budget** |
|---|---|
| **Income** | **$107,000** |
| **Building rent** | $4,500.00 |
| **Concentra (Health Insurance)** | $1,350.00 |
| **Telephone** | $248.00 |
| **Fax** | $10.00 |
| **DAT-loadboard** | $199.00 |
| **Marketing** | $250.00 |
| **Office Supplies** | $400.00 |
| **Uniforms** | $250.00 |
| **Transflow** | $345.00 |
| **Verizon** | $435.00 |
| **Waste MGM** | $319.00 |
| **GA Power** | $1,524.00 |
| **Comcast** | $336.00 |
| **Water** | $85.00 |
| **Insurance** | $8,497.00 |
| **Scana Energy** | $190.00 |
| **Tires** | $2,900.00 |
| **Driver Pay** | $25,593.28 |
| **Fuel** | $19,265.20 |
| **Office Salaries** | $31,600.0 |
| **Total Expenses** | $98,296.48 |

## **CERTIFICATE OF SERVICE**

This is to certify that on this date I served a true and correct copy of the within and foregoing EXPEDITED MOTION TO APPROVE POST-PETITION ACCOUNTS RECEIVABLE FINANCING AND USE OF CASH COLLATERAL upon the following parties by overnight mail, facsimile transmission, or electronic mail:

| Office of the U.S. Trustee<br>362 Richard B. Russell Building<br>75 Ted Turner Drive, SW<br>Atlanta, Georgia 30303 | Commercial Credit Group<br>227 West Trade St.<br>Suite 1450<br>Charlotte, NC 28202<br>Fax: 1-704-731-0030 | Freight Factoring Specialists, LLC<br>3284 N. 29th Ct.,<br>Hollywood, FL 33020<br>c/o David Jencks<br>davidjencks@jenckslaw.com |
|---|---|---|
| J&B Capital, LLC<br>1111 Northshore Drive P-270<br>Knoxville, TN 37919<br>Fax: (865) 249-6756 | 6th Avenue Capital<br>420 Lexington Avenue 24th Floor<br>New York, NY 10170<br>bizsuccess@6thavenuecapital.com | 800fund.com, LLC<br>30 Broad St 28th Floor<br>New York, NY 10004<br>iso@800fund.com |
| Retail Capital, LLC<br>d/b/a Credibly<br>1250 Kirts Blvd, Suite 100<br>Troy, MI 48084<br>customerservice@credibly.com | New State Capital Partners<br>2001 Palmer Ave<br>Suite 205<br>Larchmont, NY 10538<br>info@newstatecp.com | Electronic Funds Source, LLC<br>1104 Country Hills Drive<br>Suite 700<br>Ogden, UT 84403<br>Fax: 801-624-3093 |

| | | |
|---|---|---|
| Georgia Department of Revenue<br>Compliance Division<br>ARCS - Bankruptcy<br>1800 Century Blvd NE, Suite 9100<br>Atlanta, GA 30345-3202<br>Fax: 404-417-2101<br>BHeinz@law.ga.gov | Internal Revenue Service<br>Centralized Insolvency Operation<br>Post Office Box 7346<br>Philadelphia, PA 19101-7346<br>Fax: 267-941-1015 | Pilot Travel Centers, LLC<br>c/o The Corporation Trust Company<br>CORPORATION TRUST CENTER<br>1209 ORANGE ST.<br>Wilmington, DE 19801<br>sales@pilottravelcenters.com |
| Help, Inc.<br>510 Parkland Drive<br>Sandy, UT 84070<br>prepassupdates@prepass.com | First Insurance Funding Corp.<br>450 Skokie Boulevard, Suite 1000<br>Northbrook, IL 60062<br>Fax: 800-837-3709 | Comdata<br>5301 Maryland Way,<br>Brentwood, TN 37027<br>Fax: 615-370-7614 |
| Unifi Equipment Finance<br>3893 Research Park Dr.<br>Ann Arbor, MI 48108<br>Fax: 800.968.2808 | Murphy-Hoffman Company, Inc.<br>1524 North Corrington Street, Kansas City, MO 64120<br>Fax: 816-483-5842 | Verizon Connect Reveal<br>2002 Summit Blvd<br>Suite 1800<br>Atlanta, GA 30319<br>reveal.support@fleetmatics.com |
| Penske Truck Leasing Co., L.P.<br>Route 10 Green Hills<br>PO Box 391<br>Reading, PA 19603<br>Fax: 610-775-6432 | Quality Leasing<br>9702 East 30th Street,<br>Indianapolis, IN 46229<br>contact@qualityco.com | Ryder, Inc.<br>11690 NW 105th Street<br>Miami, FL 33178<br>customer_service-us@ryder.com |

| Axon Development Corporation c/o The Company Corporation 251 Little Falls Drive Wilmingon, DE 19808 info@axonsoft.com | Georgia Power Company 241 Ralph McGill Blvd NE, Bin 10180, Atlanta, GA, GA, 30308-3374 bscgpc@southernco.com | SCANA Energy P.O. Box 100157 Columbia, SC 29202-3157 janet.reyes@scana.com |
|---|---|---|
| Sterling National Bank 400 Rella Blvd, Montebello, NY 10901 Fax: 516-327-7290 | | |

This 6th day of November, 2018.

*/s/ Will B. Geer*
Georgia State Bar No. 940493
Wiggam & Geer, LLC
50 Hurt Plaza, SE
Suite 1245
Atlanta, Georgia 30303
T: (678) 587-8740
F: (404) 287-2767